UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| LAKEESHA ROBINSON, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> FAVORITE HEALTHCARE STAFFING, LLC ) <br> and ILLINOIS DEPARTMENT OF HUMAN ) <br> SERVICES d/b/a JACK MABLEY ) <br> DEVELOPMENTAL CENTER ) <br> ) <br> Defendants. | Case No. 3:24-cv-50062 <br><br> Honorable Judge Rebecca R. Pallmeyer |

## FIRST AMENDED COMPLAINT

**NOW COMES** Lakeesha Robinson ("Plaintiff"), by and through her undersigned counsel, complaining of Favorite Healthcare Staffing, LLC ("Favorite") and the Illinois Department of Human Services ("IDHS") d/b/a Jack Mabley Developmental Center ("Jack Mabley") (collectively, "Defendants") as follows:

## NATURE OF PLAINTIFF'S CLAIMS

1. Plaintiff brings this action seeking redress for Defendants' violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-5 *et seq*. ("Title VII").

## JURISDICTION AND VENUE

2. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 as Title VII is a federal statute.

3. Venue in this district is proper under 28 U.S.C. § 1391(b)(2) as a substantial portion of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district.

**ADMINISTRATIVE PREREQUISITES**

4. All conditions precedent have been satisfied.

5. Plaintiff filed a charge of discrimination against Favorite with the Equal Employment Opportunity Commission ("EEOC"). *See* attached Exhibit A.

6. Plaintiff received a Notice of Right to Sue from the EEOC as to Favorite and Plaintiff filed this action within ninety (90) days of Plaintiff's receipt of the EEOC's Notice of Right to Sue. *See* attached Exhibit B.

7. Plaintiff filed a charge of discrimination against Jack Mabley with the Equal Employment Opportunity Commission ("EEOC"). *See* attached Exhibit C.

8. Plaintiff received a Notice of Right to Sue from the EEOC as to Jack Mabley and Plaintiff filed this action within ninety (90) days of Plaintiff's receipt of the EEOC's Notice of Right to Sue. *See* attached Exhibit D.

**THE PARTIES**

9. Plaintiff is a natural person, over 18-years-of-age, who at most times relevant resided in Milwaukee, Wisconsin.

10. Defendant Favorite is a healthcare staffing agency that assigns its employees to perform healthcare services in different states, including Illinois. Favorite is registered with the Illinois Secretary of State.

11. Defendant IDHS runs and operates the Jack Mabley Developmental Center located in Dixon, Illinois, where Plaintiff was employed. *See* 20 ILCS 1705/4(a).

12. At all times relevant, Favorite had at least fifteen employees, was an "employer" as defined by Title VII, and was engaged in an industry affecting commerce within the meaning of Title VII, 42 U.S.C. §2000e(b).

13. At all times relevant, the IDHS/Jack Mabley had at least fifteen employees, was an "employer" as defined by Title VII, and was engaged in an industry affecting commerce within the meaning of Title VII, 42 U.S.C. §2000e(b).

## FACTUAL ALLEGATIONS

14. Plaintiff was jointly employed by Defendants as a registered nurse from April 12, 2023 to September 29, 2023 when her contract expired.

15. Favorite assigned Plaintiff to work at Jack Mabley's developmental center in Dixon, Illinois.

16. Favorite maintained control and supervision over Plaintiff because as a staffing agency, Favorite was in control of finding job placements and job opportunities for Plaintiff, decided which jobs were presented and offered to Plaintiff, acted as a liaison between Plaintiff and Jack Mabley, and communicated on behalf of Plaintiff.

17. Additionally, Favorite maintained control and supervision over Plaintiff because Favorite initially vetted Plaintiff for the specific skills and experience that Jack Mabley needed to fill an essential internal role in Jack Mabley's operations.

18. Jack Mabley also exercised significant control and supervision over Plaintiff as Plaintiff worked in Jack Mabley's facility under the supervision of Jack Mabley managers.

19. Additionally, Jack Mabley vetted and trained Plaintiff for the specific skills and experience that Jack Mabley needed to fill an essential internal role in its operations.

20. Moreover, Jack Mabley assigned Plaintiff's day-to-day tasks and job responsibilities, supervised Plaintiff's duties, controlled and issued Plaintiff's schedule, bore the costs of operation of the facility in which Plaintiff worked, promulgated policies and procedures that Plaintiff was subject to, and had the ability to determine the length of Plaintiff's job

3

commitment.

21. Plaintiff, as an African American, is a member of a protected class.

22. Throughout the duration of Plaintiff's joint employment, Defendants subjected Plaintiff to different terms and conditions of employment than others not within her protected class (non-African Americans) and subjected Plaintiff to a hostile work environment on the basis of her race.

23. Shortly after commencing her assignment at Jack Mabley, Plaintiff quickly realized that the nursing staff at Jack Mabley was predominantly Caucasian as she was one of only three African-American registered nurses at Jack Mabley.

24. Plaintiff quickly realized that she and other African-American nurses were treated differently than the non-African-American nurses.

25. Specifically, all three African-American nurses were consistently assigned to the inferior role of "sitter," despite the fact that they were all registered nurses.

26. The "sitter" role assigned to the African-American nurses was clearly an inferior role as it entailed merely sitting with patients without the opportunity to carry out customary registered nurse duties such as vital sign assessments and other meaningful nursing responsibilities.

27. Moreover, Plaintiff started noticing that the African-American nurses were being disproportionally assigned to dangerous patients that had a history of violence and aversion for African-American nurses.

28. In an effort to reverse the racial discrimination, Plaintiff reported the racial discrimination to her supervisors and requested that the "sitting" duties be distributed evenly amongst all nurses, not just the African American nurses.

29. Unfortunately, Plaintiff's request was not granted and "sitting" duties continued to be assigned exclusively to African American nurses.

30. As a result, Plaintiff again reported the discriminatory assignments to Jack Mabley Charge Nurses Jennifer Gartnet and Lance Murra.

31. Unfortunately, Plaintiff's complaint again fell on deaf ears. Specifically, in response to her complaint, Plaintiff was instructed that she "needed to sit."

32. On or about September 4, 2023, Plaintiff filed another formal complaint with Jack Mabley's Director of Nursing, Brad.

33. However, Brad failed to launch an investigation into the matter or take any remedial action.

34. Shortly after Plaintiff's formal complaint to Brad, the other two African American nurses left their employment with Defendants as a result of Jack Mabley's discriminatory practices, leaving Plaintiff as the sole African American nurse.

35. In addition to the discriminatory assignments, Plaintiff faced the unjust denial of break opportunities.

36. Specifically, whenever Plaintiff requested a break, her requests were consistently denied.

37. Other members outside of Plaintiff's protected class were not denied breaks.

38. Plaintiff made another complaint about the lack of breaks that she was given.

39. Despite her complaint about the breaks, Defendants continued to deny Plaintiff's requests for breaks.

40. Upon information and belief, Jack Mabley notified Favorite of all of Plaintiff's complaints.

41. Moreover, Favorite had actual knowledge of Jack Mabley's discriminatory practices as the other African American nurses notified Favorite of the same.

42. Despite having actual knowledge of Jack Mabley's discriminatory practices, Favorite failed to investigate the allegations of the discriminatory practices or otherwise take any remedial action.

43. Defendants failed to conduct any investigation into Plaintiff's complaints or otherwise take any action to remedy the racial discrimination despite being on notice of the racial discrimination that the African-American nurses were being subjected to.

44. As a result, Plaintiff was forced to continue to "sit" and put her health at risk by being assigned to "sit" dangerous patients until her contract expired in September 2023.

## DAMAGES

45. As a result of Defendants' conduct as set forth herein, Plaintiff suffered an adverse employment action in the form of demotion to the "sitter" role. As set forth above, the "sitter" role did not require any skills or duties that are typically associated with registered nurses and was known be a non-nursing role at Jack Mabley.

46. As a result of Defendants' conduct, Plaintiff suffered significant damages, including severe emotional distress, mental anguish, decreased self-esteem, repeated exposure to diseases, perpetual fear, humiliation, and decreased satisfaction of life.

47. Moreover, as a result of the extended duration of sitting required by the "sitter" role, Plaintiff suffered physical damage to her knees, which required medical attention, including regular injections to relieve the pain caused by the physical damage to her knees. Accordingly, Plaintiff suffered pain and suffering as a result of Defendants' conduct.

48. Plaintiff further suffered loss of employment, loss of employment benefits, and

financial distress as a result of Defendants' conduct.

49. Specifically, but for the racial discrimination, Plaintiff would have accepted Jack Mabley's offer to renew Plaintiff's contract. However, Plaintiff declined to renew in light of Defendants' discriminatory practices.

50. As a result, Plaintiff suffered periods of unemployment that she otherwise would not have experienced.

**COUNT I**
**Violations of Title VII of the Civil Rights Act of 1964**
**(Race-Based Discrimination)**
**(Against Both Defendants)**

51. Plaintiff repeats and re-alleges all the previous Paragraphs as though fully set forth herein.

52. Title VII prohibits employers from discriminating against employees with respect to her or his compensation, terms, conditions, or privileges of employment, because of her or his race, color, religion, or national origin.

53. Defendant unlawfully discriminated against Plaintiff based on her race by (1) repeatedly assigning Plaintiff to the inferior "sitter" role, (2) not allowing Plaintiff to take breaks; and (3) repeatedly assigning Plaintiff to dangerous patients.

54. As set forth above, the disparate treatment of Plaintiff and other African-Americans was solely based on race and was not based on any legitimate business purpose.

55. As set forth above, Plaintiff suffered damages as a result of Defendants' conduct.

**WHEREFORE**, Plaintiff requests the following relief:

    a. Judgment in Plaintiff's favor and against Defendants;

    b. An award of compensatory damages;

    c. An award of punitive damages;

      d.      An award of pre-judgment and post-judgment interest;

      e.      An award of reasonable attorney's fees and costs; and

      f.      Any further relief the Court may deem just and proper.

## COUNT II
### Violation of Title VII of the Civil Rights Act of 1964
### (Race-Based Harassment and Hostile Environment)
### (Against Both Defendants)

56. Plaintiff repeats and re-alleges all the previous Paragraphs as though fully set forth herein.

57. "To prove a claim [under Title VII] for hostile work environment based on race an employee must show that: '(1) he was subject to unwelcome harassment; (2) the harassment was based on his race; (3) the harassment was severe or pervasive so as to alter the conditions of the employee's work environment by creating a hostile or abusive situation; and (4) there is a basis for employer liability.'" *Williams v. Waste Management of Illinois, Inc.,* 361 F.3d 1021, 1029 (7th Cir. 2004).

58. Defendants unlawfully harassed Plaintiff and subjected Plaintiff to a hostile work environment based on her race by (1) repeatedly assigning Plaintiff to the inferior "sitter" role, (2) not allowing Plaintiff to take breaks; and (3) repeatedly assigning Plaintiff to dangerous patients.

59. The harassment was severe and pervasive as it continued even after Plaintiff repeatedly complained of the employment conditions she was subjected to.

60. As set forth above, Plaintiff suffered damages as a result of Defendants' conduct.

**WHEREFORE**, Plaintiff requests the following relief:

      g.      Judgment in Plaintiff's favor and against Defendants;

      h.      An award of compensatory damages;

      i.      An award of punitive damages;

j.   An award of pre-judgment and post-judgment interest;

k.   An award of reasonable attorney's fees and costs; and

l.   Any further relief the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury.

Dated: April 25, 2024                                                Respectfully Submitted,

/s/ *Mohammed O. Badwan*

Mohammed O. Badwan, Esq.
Sulaiman Law Group, Ltd.
2500 S. Highland Ave., Ste. 200
Lombard, IL 60148
Phone (630) 575-8180
mbadwan@sulaimanlaw.com
*Counsel for Plaintiff*

9